## DICKSON v. DICKSON and VALVE AND PRIMER CORPORATION v. DICKSON, et al. and In Re: The Marriage of VINCENT B. DICKSON and MARY CHRIS COX DICKSON and VALVE AND PRIMER CORPORATION (Consolidated for Trial)

### Case Nos. 83-40662 and 83-43259

Eleventh Judicial Circuit, Dade County

June 28, 1984

### APPEARANCES OF COUNSEL

**Richard H.M. Swann** and **John T. Longino, Gaston, Snow & Ely Bartlett Hall & Swann,** for Vincent B. Dickson.

**Melvyn B. Frumkes** and **Cynthia L. Greene** for Mary Chris Cox Dickson.

**Thomas H. Seymour** and **Victor H. Polk, Jr., Kenny Nachwalter & Seymour, P.A.** for Valve and Primer Corporation.

## OPINION OF THE COURT

PHILLIP W. KNIGHT, Circuit Judge.

This action was heard before the Court for Final Hearing the 21st and 22nd days of June, 1984. The Court heard the testimony of the parties and of the witnesses called by them, thereby having the opportunity to view their demeanor and ascertain their credibility. Furthermore, the Court read the transcripts of all of the depositions offered to the Court for reading and reviewed all of the exhibits. Based thereon, the Court finds as follows:

### DISSOLUTION OF MARRIAGE

A. The Court has jurisdiction of the subject matter and of the parties and specifically finds that the Wife has been a resident of Florida for more than six months next preceding the filing of the Petition for Dissolution of Marriage by the Wife.

B. The marriage between the parties is irretrievably broken, a vinculo matrimonii.

C. The parties were married to each other on December 30, 1967 in Las Vegas, Nevada and resided as Husband and Wife for approximately seventeen years until their final separation.

D. There were no minor children born of the marriage, although the husband did adopt one of the Wife's children, Nicholas, born August 14, 1964, now age nineteen years.

E. At the time of the marriage the Husband owned 54% of the outstanding shares of stock of Valve and Primer. The Husband had worked long, hard and very industriously. He was a very gifted gentleman in the building of Valve and Primer from its infancy until the time of the marriage.

F. Prior to the marriage, the Husband also owned a one-half interest in a mansion in Illinois which was sold for approximately $85,000. The Husband's one-half interest of the proceeds was utilized in the purchase of assets for Valve and Primer.

G. At the time of the marriage, the Wife had nominal assets.

H. During the marriage, the Husband voluntarily gave and transferred to the Wife 271 shares of stock of Valve and Primer and at a later date she purchased 600 shares of Valve and Primer so that at one point during the marriage, she owned 871 shares, an amount approximately equal to that which the Husband owned. The Wife has since sold 600 shares of Valve and Primer that were in her name for valuable consideration.

134

I. Of the outstanding shares of Valve and Primer, the Husband, at the time of the Final Hearing, owns 829 shares in his name and the Wife owns 271 shares in her name.

J. During the marriage, the Wife demonstrated her tremendous financial acumen contributing to the business of the parties. She was a substantial, and toward the end of the marriage, a principal motivating factor in the financial success of Valve and Primer and also of the other businesses that were acquired by the parties during the marriage, some in their individual names, some in their joint names.

K. This is a proper case for the application of the doctrine of equitable distribution and in applying such doctrine, the Court has considered that the value of the Husband's estate at the time of the marriage was approximately $200,000, that all other assets in the name of both or either of the parties, with the exception of the stock of Valve and Primer, were assets that were acquired by the parties during the marriage and are therefore marital assets regardless of how title is held.

L. In determining the distribution of marital assets, the Court has considered the following factors:

(i) The contribution to the marriage by each spouse, including the contribution that the Wife made as homemaker, as well as a breadwinner and the performance of her duties with Valve and Primer and with the other assets and businesses that were acquired by the parties during the marriage.

(ii) The economic circumstances of the parties at this time, as well as that which occurred during the marriage.

(iii) The duration of the marriage.

(iv) The desirability of retaining an asset in one person's name to the exclusion of the other to encourage a successful and continued business practice and to keep same intact and free of any claim or inteference by the other party.

(v) The contribution of each spouse to the acquisition, enhancement and production of income of each of the marital assets.

(vi) All other factors that were submitted to this Court at Final Hearing to enable this Court to do equity and justice between the parties.

M. There are no non-marital assets other than that which has heretofor been mentioned that were brought into the marriage by either party.

Upon consideration of all of the foregoing, it is

**135**

ADJUDGED, as follows:

1. The bonds of marriage between the Husband, Vincent B. Dickson and the Wife, Mary Chris Cox Dickson, are dissolved.

2. There is distributed to the Husband the following assets of which the Court has made, in its consideration, the following valuations, to wit:

(a) An undividied one-half of the beneficial interest of the trust known as the Skokie Land Trust, which has titled to the unimproved real property in Schaumburg, Illinois contiguous to the property upon which the Valve and Primer plant is situate, which has a value of $250,000.

(b) The Clearwater condominium, and its contents, with the exception of the Wife's personal effects that may be located therein, which has a value of $140,000.

(c) The Dadeland condominiums, which have a value of $225,000.

(d) The Kirou note and mortgage, which has a value of $96,021.

(e) The Magnuson note and mortgage, which has a value of $56,146.

(f) The Kuiper note and mortgage, which has a value of $86,616.

(g) The Husband's interest in the profit sharing trust, which has a value of $154,217.

(h) The lease described as Lease #1, which has a value of $106,503.

(i) The lease described as Lease #3, which has a value of $106,503.

(j) The lease described as Lease #10, which has a value of $150,197.

(k) The Shapiro purchase money note and mortgage, which has a value of $1,087,500.

(l) The F-27 Airplane, which has a value of $600,000.

(m) The escrow in the Pan American Bank, which is in the amount of $26,000.

(n) The miscellaneous marketable securities, which have a value of $15,000.

(o) The amount receivable from Capital Manufacturers Corporation, which has a value of $25,000.

(p) All of the outstanding capital stock of Pacific Alaska Airlines, which has a value of $1,000,000.

(q) The Husband's jewelry and personal effects which, for the purposes of equitable distribution, the Court attributes a value of $65,000.

3. There is distributed to the Wife the following assets of which the Court has made, in its consideration, the following valuations, to wit:

(a) All of the shares of stock of Valve and Primer held in the name of either the Husband and/or Wife, the joint value of which is in the amount of $704,000.

(b) The Wife's jewelry and other personal effects which the Court, for purposes of equitable distribution, attributes a value of $65,000.

(c) The Wife's interest in the profit sharing trust which has a value of $104,362.

(d) The entire beneficial interest in the American National Bank Land Trust which has title to the two parcels of real property in Schaumburg, Illinois, upon which the plant of Valve and Primer is situate, which has a value of $2,000,000.

(e) An undividied one-half of the beneficial interest of the trust known as the Skokie Land Trust, which has title to the unimproved real property in Schaumburg, Illinois contiguous to the property upon which the Valve and Primer plant is situate, which has a value of $250,000.

(f) The marital residence and all of its contents, which is located in Gables by the Sea, which has a value of $900,000.

(g) All of the outstanding capital stock of Capital Manufacturers Corporation which has a value of $493,000.

4. There shall be distributed to the Wife all of the following liabilities which shall be the sole responsibility of the Wife and the Wife shall hold the Husband harmless from any of such indebtedness, to wit:

(a) Royal Trust Bank, including interest, in the amount of $38,000.

(b) County National Bank in the amount of $147,150.

(c) B.B. Cohen in the amount of $132,343.

(d) Toshiba in the amount of $220,000.

(e) Dade Federal (which is the note secured by the mortgage on the marital residence) in the amount of $98,000.

5. Each of the parties shall have a reasonable time from the date hereof in which to remove their personal effects from the other's place of residence, the Husband to remove his personal effects from the marital residence and the Wife to remove her personal effects from the Clearwater condominium.

6. Each of the parties shall forthwith execute and deliver to the other

**137**

whatever deeds, instruments of conveyance, stock powers or other writings that may be necessary to effect the provisions of this Final Judgment.

7. Each party is well able to bear their own attorneys' fees and suit monies and the Court does therefore deny any claim for attorneys' fees and suit money other than that for which the Court has heretofor reserved because of the Husband's failure to produce documents that the Court heretofor directed. The Court continues to reserve jurisdiction for that limited purpose.

8. The Court further reserves jurisdiction to enforce all of the terms and provisions of this Final Judgment.

## THE CIVIL ACTION

### A. Personal Jurisdiction

9. Henrietta R. Dickson, Mary Chris Cox Dickson, Vincent B. Dickson and Valve and Primer are all residents of the State of Florida.

10. David S. Dickson, Jane L. Dickson and James L. Dickson have each operated, conducted, engaged in and carried on a business in the State of Florida and the County of Dade.

11. The Court has jurisdiction over the subject matter of this action, including the Counterclaim and Third Party Complaint, and over the parties.

### B. Complaint—Counts I and II

12. Counts I and II of the Complaint were voluntarily dismissed by the Plaintiff on November 29, 1983.

### C. Complaint—Count III

13. In 1980, Valve and Primer paid Vincent B. Dickson wages of $135,000.00.

14. In 1981, Valve and Primer paid Vincent B. Dickson wages of $100,000.00.

15. In 1982, Valve and Primer paid Vincent B. Dickson wages of $100,000.00.

16. In 1983, Valve and Primer paid Vincent B. Dickson wages of $85,000.00.

17. Valve and Primer has paid to Vincent B. Dickson all salary amounts to which Vincent B. Dickson has been entitled.

18. Vincent B. Dickson has requested that Valve and Primer handle

**138**

his personal checking account and pay his personal expenses on his behalf.

19. With minor exceptions, in handling Vincent B. Dickson's personal financial affairs, Valve and Primer personnel have deposited Mr. Dickson's salary checks into Mr. Dickson's personal checking account with Mr. Dickson's knowledge and consent. In 1983, three of Mr. Dickson's salary checks were not deposited into Mr. Dickson's account, but these checks were properly deposited in the account of Mary Chris Cox Dickson as reimbursement for personal expenses of Vincent B. Dickson that she had directly paid.

20. The Court finds against Vincent B. Dickson and in favor of the Defendants Valve and Primer Corp. and Mary Chris Cox Dickson on Count III of the Complaint.

### D. Complaint—Count IV

21. Plaintiff has failed to prove any tortious interference with any contractual relationship.

22. The Court finds against Vincent B. Dickson and in favor of the Defendants on Count IV of the Complaint.

### E. Valve and Primer Counterclaim—Count I

23. The Court finds that Valve and Primer has failed to prove by a preponderance of the evidence an abuse of process since Mr. Dickson acted at all times with the advice of counsel and his actions were not taken in a vindictive manner. Rather, Mr. Dickson's actions were to pursue each and every resource to which he believed he was entitled under Florida and Illinois law.

24. The Court finds against Valve and Primer and in favor of Vincent B. Dickson on Count I of Valve and Primer's Counterclaim and Third Party Complaint filed by Valve and Primer against Vincent B. Dickson, David S. Dickson, Jane Leone Dickson, James L. Dickson and Henrietta R. Dickson (referred to herein as "Valve and Primer's Counterclaim").

### F. Valve and Primer Counterclaim—Count II

25. The Court finds that Vincent B. Dickson did breach his fiduciary duty to Valve and Primer by engaging in a course of conduct in relationship to Valve and Primer's employees when serving as a director of Valve and Primer. However, the Court finds that such actions did not in face cause damage to Valve and Primer. Thus, the doctrine of *damno absque injuria* applies and no damages were shown to result from Mr. Dickson's acts.

**139**

26. The Court finds that Valve and Primer has failed to show that Mr. Dickson divulged secrets of the corporation with the exception of distributing microfilm to Hytohalyves Thessalonikis—VioValve, S.A. With regard to the divulgence of the microfilm by Mr. Dickson, such acts did not result in damage to Valve and Primer and Valve and Primer is barred from recovery by the doctrine of *damno absque injuria*.

27. With regard to the allegations concerning Mr. Dickson's inteference with union negotiations, the Court finds that any correspondence between Mr. Dickson and the union did not comprise a breach of fiduciary duty.

28. The Court finds against Valve and Primer and in favor of Vincent B. Dickson on Count II of Valve and Primer's Counterclaim.

### G. Valve and Primer Counterclaim—Counts III and IV

29. The Court finds against Valve and Primer in that Valve and Primer has failed to prove by the preponderance of the evidence that, in fact, the 960 shares of Valve and Primer stock were improperly purchased by Vincent B. Dickson with the assets of Valve and Primer.

30. Even assuming that the 960 shares of Valve and Primer stock had been improperly purchased with Valve and Primer's funds, the Court finds that Valve and Primer knew or should have known of any such action by Mr. Dickson and, as such, Valve and Primer's claim for imposition of a constructive trust is barred by the doctrine of laches.

31. The Court finds in favor of Vincent B. Dickson on Count III and in favor of David S. Dickson, James L. Dickson, Jane Leone Dickson and Henrietta R. Dickson on Count IV of the Counterclaim.

### H. Mary Chris Cox Dickson's Counterclaim

32. The Court finds that Mary Chris Cox Dickson has failed to prove the intentional infliction of emotional distress, abuse of process, breach of fiduciary duty and conspiracy alleged in her Counterclaim.

33. The Court finds against Mary Chris Cox Dickson and in favor of the Counterdefendants to Mary Chris Cox Dickson's Counterclaim and Third Party Claim filed against Vincent B. Dickson, David S. Dickson, Jane Leone Dickson, James L. Dickson and Henrietta R. Dickson.

### I. Miscellaneous

34. Each party shall bear their own attorneys' fees and suit monies and the Court does therefore deny any claim for attorneys' fees and suit money other than that for which the Court has heretofor reserved

because of Vincent B. Dickson's failure to produce documents that the Court heretofore directed. The Court continues to reserve jurisdiction for that limited purpose.